**LOVEJOY COMPANY, a Corporation, et al., v. AGNES TODD ACKIS**

16 So. (2nd) 297            June Term, 1943
January 4, 1944             Division B
Rehearing Denied February 1, 1944

Osborne, Copp & Markham and J. Henson Markham, for appellants.

E. W. Maynard, S. G. Jones (Macon, Georgia), Chas. J. Regero (Jacksonville, Florida), and Sam A. Nunn (Perry, Georgia), for appellee.

THOMAS, J.:

In our discussion we will allude to Agnes Todd Ackis and Ola Tate Ackis, but we are concerned only with the claim of the former, who was the second wife of G. C. Ackis, now deceased.

Five questions are presented by appellants; one by. appellee.

The order was originally entered by the deputy commissioner of Florida Industrial Commission finding that Agnes Todd Ackis was the true wife of G. C. Ackis; that Ola Tate Ackis was not, as she had been properly divorced; that the claim to compensation by the former should be granted; that the claim of the latter should be denied; and that Florida. Industrial Commission had jurisdiction to determine the cause. In other words, aside from the merits of the claim for compensation the deputy commissioner decided, factually, that the deceased was not employed exclusively in the State of Georgia, but served also in Florida. As a matter of law he found that Agnes Todd Ackis was the lawful wife of the deceased. Even assuming that the validity of the divorce

obtained by the deceased from Ola Tate Ackis could be determined in a proceeding of this kind, there is no need to pursue the matter in view of the ruling of this court in Roberts et al. v. Roberts, 124 Fla. 116, 167 So. 808, and the absence of Ola Tate Ackis as a party to this appeal.

Florida Industrial Commission reviewed the case and affirmed the deputy's order. The cause then reached the circuit court, where the rule announced in Roberts, et al., v. Roberts, *supra,* was applied as was the "extraterritorial provision of the . . . Compensation Act" anent the regular service in Georgia and occasional service in Florida.

As indicated by the opinion of the circuit judge two other propositions of law were introduced in the argument of the appeal before him. He determined that failure of Agnes Todd Ackis to elect within thirty days to take compensation did not defeat her right to it and that her claim was not lost when she sued third parties in an action at law and later settled and dismissed under circumstances we will presently discuss. He decided that there should be a credit, however, "upon the compensation benefits," of $472.99, the net amount she received as a compromise of her right of action.

In the hope that the facts will thereby become less complicated we will hereafter call the appellants, employer, Agnes Todd Ackis (the first wife), claimant, and G. C. Ackis, the deceased.

In addition to the (1) question of jurisdiction the employer insists (2) that claimant was entitled to no compensation because of the conduct on her behalf of the civil suit and (3) that if allowed compensation there should have been a credit of $1,900.00, the sum of the amounts paid in settlement of that suit and the one brought by Ola Tate Ackis, the first wife. If (4) not entitled to a credit of $1,900.00 it maintains that at any rate it should be given a credit of the gross amount she received, not the net amount as determined by the circuit judge. Claimant argues that the circuit judge should not have allowed a deduction even in the net amount, thereby correspondingly reducing the award of the Commission.

The employment had its inception when the employer, a Florida corporation, telegraphed the deceased, then residing in Alabama, that it needed the services of a good industrial man "for Alemite" and invited him to Jacksonville for a conference. He acceepted the invitation and was ultimately employed primarily to work in Georgia because it was there that the employer wished to introduce and further the sale of its product for use in textile mills. Deceased removed his residence to that state and was living there when he died. During the employment he did, however, make several trips to places in the State of Florida in the interest of his employer, and each of these visits was of three or four weeks duration. Although his principal work was done in Georgia, it is a fair construction of the evidence that he did upon occasion serve his employer in the same capacity in this state. His death resulted from injuries received in Georgia when his car collided with one driven by John E. King and owned by Chase Brass & Copper Company. At the time of the mishap he was en route to Jacksonville for a conference with his employer. This happened 10 December 1938. On 21 August 1939 the wife filed her claim with Florida Industrial Commission, and on 13 November 1939 Ola Tate Ackis also presented a claim. These were heard by the deputy commissioner with the result we have already given.

We think the first stated question, relative to the jurisdiction of Florida Industrial Commission over the claim, was properly answered by the circuit court. The controlling part of Workmen's Compensation Law is found in Sec. 9 (Sec. 440.09 Florida Statutes, 1941, Sec. 440.09 F.S.A.) where it is provided that if "an accident happens while the employee is employed elsewhere than in this state, which would entitle him or his dependents to compensation if it had happened in this state, the employee or his dependents shall be entitled to compensation, if the contract of employment was made in this state, and if the employer's place of business is in this state or if the residence of the employee is in this state, provided, his contract of employment was not expressly for service exclusively outside of this state . . . ." Under it, as it applies to this contest, three elements must be established

to warrant recovery: (1) meritoriousness, which we will not discuss, as the injury arose out of and in the course of employment; (2) execution of the contract in this state, which cannot be disputed, as it was entered into at Jacksonville; and (3) residence in this state of either employer or employee, a requirement fully satisfied here because the former is a Florida corporation. In any event the proviso obtains that the agreement was not *expressly* for services exclusively beyond the bounds of this state.

We think the evidence was properly construed as showing that there was no express understanding to work only in Georgia. True, the duty of the deceased was to represent the employer principally in that state, where most of its customers operated, but his activities were not, in contemplation of the contract, to be confined there. The claims were legally presentable here.

We pass then to the effect upon claimant's demand of an effort to recover against the owner and driver of the other car in the collision which caused her husband's death. It seems necessary now to give the dates on which the suits were instituted and dismissed and the claims were filed. The wife presented her claim to Florida Industrial Commission 21 August 1939, filed her suit 26 November 1940, and settled and dismissed it 18 April 1941. She received $950.00, or approximately $472.99 after costs and expenses had been deducted. This is the sum referred to by the chancellor in his decree. Incidentally, Ola Tate Ackis received a like gross sum in settlement of her suit against the same defendants wherein she also sought recovery as the widow of the deceased.

Gist of the question now under consideration is failure of claimant to comply with Sec. 39 of Workmen's Compensation Law F.S.A. Sec. 440.39 while she pursued her remedy at law and compromised her claim at a time when it had apparently become too late, by operation of the Statute of Limitations, for the employer to exercise any right of subrogation to a suit against any parties that were responsible for the death of the deceased. Thus is presented a very novel problem.

The time for filing claims is prescribed in Secs. 440.19 and

440.25 Florida Statutes, 1941, (F.S.A. Secs. 440.19 and 440.25). Although the deceased met his death in 1938 the wife did not file her claim until August of the following year. It is not charged that it came too late for consideration by the Commission, but in view of the other circumstances of the case the delay is significant. At the hearing conducted by the deputy commissioner in December, 1940, it was first disclosed, so it is charged, that the wife had instituted her third party action. According to stipulation of the counsel the Statute of Limitations of Georgia Code Sec. 3-1004 provides that "suit must be filed within two years from the date of death of the person for the value of whose life a recovery is sought." Any action, even if another one could have been brought in view of the compromise and its dismissal was, therefore, barred about the time that the employer became aware that the claimant had resorted to a court of law.

On many occasions this court has announced the purpose intended to be accomplished by the enactment of the Workmen's Compensation Law. In Duff Hotel Co. et al. v. Ficara et al., 150 Fla. 442, 7 So. (2nd) 790, 791, Mr. Justice TERRELL observed that it was "a product of industrialism and proceeds on the theory that economic loss to the individual by injury in line of duty should be borne in part by the industry in which [the workman] is employed in order that his dependents may not want." It was written in A. F. Wheeler et al. v. Pullins, etc., 152 Fla. 96, 11 So. (2nd) 303, 305 that " . . . its design was to provide for injured workmen and, in the event of their death from injuries received in their employment, their dependents, that the burden might not fall upon society but upon the industry served." Again, in Maryland Casualty Co., et al. v. Sutherland, 125 Fla. 282, 169 So. 679, 683, the court stated "The Legislature intended . . . to provide for all industrial accidents, covered by the statute, whether resulting in injury or death, where the employment was other than casual and the injury occurred in the course of employment . . . " Then there was quoted Sec. 3 of the act: " 'From and after the taking effect of this Act, *every* employer and *every* employee, unless otherwise specifically provided, shall be presumed to have accepted the provisions of this Act, re-

spectively to pay and accept compensation for *injury* or *death*, arising out of and in the course of employment, and shall be bound thereby, unless he shall have given prior to the injury, notice to the contrary as provided in Section 5.' "

Nothing having been shown to the contrary, we may assume that no such notice was given and that the benefits of the act were acceptable to G. C. Ackis. Therefore, if his death resulted from an accident arising out of and in the course of his employment his widow was entitled to compensation, irrespective of negligence on the part of a third person.

Difficulty is experienced in deciding this case because of the course followed by the claimant in her attempt to recover for the death of her husband, occurring while employed, as contemplated by the act, but chargeable to the negligence of an outsider.

If the mishap is occasioned by negligence of a third person not only is a new element introduced, but a different procedure is followed. In such cases the provisions of Sec. 39, *supra*, apply. It is provided that if compensation is collectible—we have concluded that in the instant case it was—and the person entitled to it *determines* that someone other than the employer is liable he may elect within thirty days of the accident, in the manner prescribed by the Commission, to take compensation or recover damages against the other person.

We pause now to discuss the word "determines" which we have italicized. It is apparently the prerogative of the claimant to decide in the first instance, compensation being otherwise awardable, whether the loss is chargeable to the misdeed of the third party. If no such conclusion is reached, then the claim is allowed on the theory that, damage having arisen from service performed by the industry, by the industry it should be borne. If, on the other hand, a contrary determination is reached by the claimant, the election to sue or claim compensation is required to be made within thirty days of the injury. So the initiative is exercised by the one who is to receive the benefit.

When compensation is preferred the election operates to

assign the cause of action to the employer, who in turn may sue,—or compromise if the settlement is approved by a circuit judge. In either event money received by the employer may be disbursed by paying in their order: the expenses incurred by him in the suit, expenditures for medical services and the like (under Sec. 440.13 Florida Statutes, 1941; F.S.A. Sec. 440.13) and amounts paid for compensation. Any excess over these items must be delivered to the claimant. The manner of proceeding if there is an election to pursue the remedy at law is not defined in the statute, but it is a fair inference that in such case the claimant thereby seeks damages from the wrongdoer independently of any benefit under Workmen's Compensation Law. We are largely influenced in this view by our utterances in former opinions. For instance, in Sweat, et al., v. Allen, 145 Fla. 733, 200 So. 348, we said "the Legislature has preserved the employee's common law right of action [in cases where injury is caused by negligence of third parties] . . . so that the workman is not limited or curtailed solely to compensation allowable if the injury inflicted by the third person's wrongful act is of greater proportion." In another decision we held that Sec. 39, *supra,* did not amend Secs. 7047 and 7048 C.G.L. 1927, Secs. 768.01 and 768.02, Florida Statutes, 1941, (F.S.A. Secs. 768.01 and 768.02) relative to claims for deaths caused by negligence, "but is an independent enactment supplemental of and in addition to such sections," State ex rel. Jacksonville Gas Co. v. Lewis, et al., 125 Fla. 816, 170 So. 306. In a still later case, Hartquist v. Tamiami Trail Tours, 139 Fla. 328, 190 So. 533, it was said: "The Court is therefore of the opinion that the requirement that the employee give evidence of his election to sue was intended solely for the benefit of the person liable for the statutory compensation, and was not intended to curtail or affect the existing remedies of the employee against the third party. Nor is it to be construed as a limitation upon the right of the employee to commence an action against a third person."

This is the construction, too, placed on the clause by the Commission, for in the form prescribed by it, as required under Sec. 39, *supra,* for signature by claimants desiring

to sue in their own behalf, there is the commitment that the "employer and/or his insurance carrier [will be relieved] from all liability in this case" and that the signer will "pay all medical and hospital expenses from any amount recovered from third party and . . . refund to the employer and insurance carrier any amounts already expended by them for medical expenses or compensation payments."

Now we pose the question: If, as held in Sweat, et al., v. Allen, *supra,* the common law right of action is preserved to the employee so that he may recover more than allowable under the act; if, as said in Hartquist v. Tamiami Trail Tours, *supra,* election is meant as well to protect the employer as not to hamper the claimant; and if the latter has the initiative, how can the action of the wife in this case be sanctioned?

She made no choice, as contemplated by the statute, thereby giving the employer the opportunity, if she preferred compensation, to attempt collection from the wrongdoer. She did not notify it that she wished to embark on a suit at law to recover damages thereby probably releasing the employer and the carrier from any liability. She attempted, instead, to file for compensation, meanwhile keeping the employer uninformed of any determination by her that an outsider was liable, and then she sued at law. The right to make the determination reposed in her, but the responsibility to announce it when made was likewise hers. Her common law privilege to sue was unaffected, and if she decided to avail herself of it she should not also have sought compensation under the act. Had she resolved that there was liability on the part of another for her loss she should have so notified the employer in order that it might have enforced the claim by suit, making itself whole or partly whole from the amount recovered. She gave no notice of election yet brought her suit and claimed compensation, thus depriving employer and carrier of the opportunity of placing the burden on the one who should have sustained it. It seems to us that the wife should have been left in the position where she placed herself, party plaintiff in the suit in Georgia, there to receive whatever sum she recovered by verdict or settlement, as recompense for the loss of her husband.

It should be stated that the deputy, the Commission, and the circuit judge could have found authority in Sweat, et al., v. Allen, *supra,* for allowing and confirming the award, but for the reasons we have given we think that any statements there inconsistent with what we have written here must, when applied to the facts reflected in this record, be overruled.

Having this view it seems unnecessary to extend this opinion by dwelling upon the other questions presented by appellants and the one posed by appellee.

Reversed.

TERRELL, BROWN, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., and CHAPMAN, J., dissent.

CHAPMAN, J., dissenting:

. The basis for a reversal of a decree or judgment of the lower court is largely upon the theory that the insurance carrier is prejudiced by the settlement of the dependents of the employee.

The record here discloses that the insurance carrier, at all times, denied liability for the death of the employee on a number of grounds appearing in the record. It so contended in its answer filed with the Industrial Commission and so contends by the third question discussed in the brief here. (See Appellant's Brief, pages 32-33.)

The doctrine of subrogation is applied when, *and when only,* the insurance carrier has paid the compensation for which it is liable. In the case at bar it has contended in every step of the case that it was not liable as a carrier and has never paid any money and its rights cannot be prejudiced until its liability is established. See Boley v. Daniels, 72 Fla. 121, 72 So. 644; Meyer v. Florida Home Finders, 90 Fla. 128, 105 So. 267. If the insurance carrier had paid the claim, it could successfully contend that its rights had been prejudiced. Its rights in the third party litigation have not been prejudiced, because it denied liability at every step of the litigation, and even in this Court. The Florida Workmen's

Compensation Act is a modification of the New York Workmen's Compensation Act, enacted in 1913; Longshoremen's Act of 1927, and the Wisconsin Workmen's Compensation Act. The Supreme Court of the United States, in Chapman v. Hoag, 296 U. S. 526, 80 L. Ed. 370, 56 Sup. Ct. 333, held, on a set of facts similar to the ones here involved, that the carrier was not discharged by a compromise of a third party suit, nor prejudiced thereby, and this decision is clearly in line with our holding in Sweat v. Allen, 145 Fla. 733, 200 So. 348.

Schneider's Workmen's Compensation Law, Vol. 1, page 322, when considering an Alabama Compensation Statute, held in accord with our holding in Sweat v. Allen, *supra*. See Georgia Casualty Co. v. Haywood, 210 Ala. 56, 96 So. 87; Benoit Coal Mining Co. v. Moore, 215 Ala. 220, 109 So. 787.

In Workmen's Compensation cases subrogation rights do not come into existence unless the carrier has paid to the employee compensation, and this rule has been sustained in Sweat v. Allen, *supra*. The same rule is applied in Alabama, California, Connecticut, and practically all the States of the Union. See Schneider on Workmen's Compensation Law, Vol. 1, pp. 332-386. These several Statutes and holdings are in accord with Sweat v. Allen, *supra*.

We are not called upon, under the full faith and credit clause of the Federal Constitution, to recognize the judgment or proceedings in the State of Georgia where the widow-claimant brought suit against the third party. The proceeding in the Georgia Court by the claimant against the third person tort-feasor and the settlement thereof were not binding on the insurance carrier here. See Wisconsin Mutual Liability Co. v. Industrial Commission, 190 Wis. 598, 209 N.W. 697.

The Supreme Court of Wisconsin, in construing the compensation statute similar to ours, held in line with Sweat v. Allen to the effect that a settlement by claimant with a third party tort-feasor was not binding on the insurance carrier. The carrier could maintain its action after payment of the award, or could repudiate the settlement and re-litigate it,

or could ratify the settlement as made between the claimant and the third party tort-feasor.

The filing of the claim by the widow with the Florida Industrial Commission in August, 1939, prior to the running of the two year statute of limitations in the State of Georgia, under Section 39 of the Compensation Act, had the legal effect of placing the insurance carrier on notice of potential liability under the terms of its policy. The law required the insurance carrier, prior to the running of the statute of limitations, immediately to take steps for the protection of its rights under the terms of its policy, but the record discloses that the insurance carrier declined so to do and contended on numerous grounds that no liability existed. See Wisconsin Mutual Liability Co. v. Industrial Commission, *supra*.

The denial of compensation to the widow, coupled with a departure from Sweat v. Allen, is, to say the least, a harsh ruling. The employer was immediately advised of the death of its employee; the carrier was bound to have received this information; the claimant filed with the Florida Industrial Commission her claim prior to the running of the two year statute of limitations under the Georgia Code; a denial of all liability to the employee has been asserted from the day of the accident and in question three of its brief asserts that defense in this Court.

BUFORD, C. J., concurs.